**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                                  *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LISA WARDELL,** : | |
| **513 Center Street, Apartment 1** : | |
| **Dunmore, PA 18512** : | **Civil Action No.** |
| **Plaintiff,** : | |
| : | **Complaint and Jury Demand** |
| **v.** : | |
| : | |
| **QUALITY SERVED FAST, INC. d/b/a** : | |
| **WENDY'S,** : | |
| **1170 Harry P. O'Neill Highway** : | |
| **Dunmore, PA 18512** : | |
| : | |
| **10 Downs Drive** : | |
| **Wilkes Barre, PA 18705** : | |
| **Defendant.** : | |

## CIVIL ACTION

Plaintiff, Lisa Wardell (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, brings this civil matter against Defendant, Quality Served Fast, Inc. d/b/a Wendy's (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, the Americans with Disabilities Act of 1990 ("ADA"), as amended, and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff is an adult individual residing at the above captioned address.

2. Upon information and belief, Quality Served Fast, Inc. d/b/a Wendy's is a franchisee of fast-

food restaurants with a location at 1170 Harry P. O'Neill Highway, Dunmore, PA 18512 and with a corporate headquarters located at 10 Downs Drive, Wilkes Barre, PA 18705.

3. At all times relevant hereto, Plaintiff worked at Defendant's location.

4. At all times relevant hereto, Defendant was an "employer" within the meaning of Title VII and the PHRA.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## **JURISDICTION AND VENUE**.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff exhausted her administrative remedies under Title VII, the ADA and the PHRA.

12. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging gender discrimination, disability discrimination and retaliation against Defendant.

13. The Complaint was assigned a Charge Number 530-2020-04705 and was dual filed with the Pennsylvania Human Relations Commission.

14. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated December 29, 2020. Plaintiff received the notice by electronic mail.

15. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

16. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

17. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

18. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

19. In June 2019, Defendant hired Plaintiff in the position of Crew Member.

20. Plaintiff was well qualified for her position and performed well.

### PLAINTIFF IS DIAGNOSED WITH A DISABILITY AND IS REQUIRED TO UNDERGO A SURGICAL PROCEDURE FOR TREATMENT

21. In December 2019, Dr. Meghan Haggerty, Radiation Oncologist, diagnosed Plaintiff with Stage 2 Breast Cancer in her right breast.

22. As a result of Plaintiff's diagnosis, she was required to have a breast lumpectomy and a sentinel lymph node biopsy.

23. Plaintiff was scheduled to have these surgical procedures performed by Dr. Timothy J. Farrell, Surgeon, on January 16, 2020.

### PLAINTIFF REQUESTS THE REASONABLE ACCOMMODATION OF A MEDICAL LEAVE OF ABSENCE AND IS APPROVED

24. Plaintiff was required to go on a medical leave of absence in order to recover from her surgery.

25. Plaintiff informed Kim Gordon, Manager, and Dawn LNU, General Manager, of her diagnosis and need for a surgery to treat her disability.

26. Defendant approved Plaintiff's request for the reasonable accommodation of a medical leave of absence in order to have the surgery and recover from it.

### PLAINTIFF GOES OUT AND RETURNS FROM HER MEDICAL LEAVE

27. On or around January 15, 2020, Plaintiff began her medical leave of absence and the next day, Dr. Farrell conducted Plaintiff's operation.

28. In or around mid-February 2020, Plaintiff returned from her medical leave of absence.

## PLAINTIFF CONTINUED TO UNDERGO RADIATION TREATMENT FOR HER DISABILITY AND REQUESTED ADDITIONAL ACCOMMODATION

29. However, she remained under Dr. Haggerty's care in order to receive radiation treatment for 12 weeks.

30. As a result of the radiation treatment, Dr. Haggerty wrote a note requesting the reasonable accommodations of leaving work for approximately one (1) hour in order to receive radiation treatments Monday through Friday and to take a 30-minute break every shift in order to eat and drink to help recover from the radiation treatment for Plaintiff.

## DEFENDANT INITIALLY ACCOMMODATED PLAINTIFF AND THEN REFUSED SHORTLY AFTERWARDS

31. Plaintiff gave Dr. Haggerty's note to Mr. Gordon.

32. Ms. Gordon informed Plaintiff that she would be able to accommodate Plaintiff, but after two (2) shifts, Defendant refused to accommodate Plaintiff.

33. Plaintiff complained multiple times to management, including, but not limited to Ms. Gordon and Dawn, but Defendant continued to refuse to accommodate her.

## PLAINTIFF AND HER COWORKERS ARE SEXUALLY HARASSED AND DEFENDANT REFUSED TO ADDRESS IT

34. In or around January 2020, Thomas Ogden, Crew Member, began working at Defendant.

35. From the start of his employment, Mr. Ogden sexually harassed Plaintiff and other female coworkers.

36. Mr. Ogden sexually harassed Plaintiff by making comments, such as, that Plaintiff "needed an Italian in her," stating that they would have fun together in bed and asking Plaintiff if she wanted a kiss because it looked like she needed a kiss.

37. Plaintiff denied Mr. Ogden's sexual advances and repeatedly instructed him not to speak to her in that manner.

38. However, Mr. Ogden continued to sexually harass Plaintiff approximately once per week at Defendant.

39. Mr. Ogden sexual harassment of Plaintiff's coworkers around Plaintiff occurred every shift.

40. Mr. Ogden frequently made sexually inappropriate comments regarding Payton LNU's, Shift Manager, appearance, such as, that she was "hot."

41. In addition, Mr. Ogden frequently told Payton needed to be with a "real man" in an attempt to have her leave her boyfriend and be romantically involved with him.

42. Payton denied Mr. Ogden's sexual advances and instructed him not to speak to her in that manner.  However, Mr. Ogden did not cease his conduct.

43. Defendant's management, including, but not limited to, Vicki LNU, Shift Manager, and Ms. Gordon, witnessed Mr. Ogden's sexual harassment of Plaintiff and other female staff.

44. However, Defendant's management refused to address Mr. Ogden's sexual harassment.

**MR. OGDEN HARASSED A HOMOSEXUAL EMPLOYEE BECAUSE OF HIS SEXUAL ORIENTATION AND DEFENDANT REFUSED TO ADDRESS IT**

45. Mr. Ogden also harassed Brady LNU, Crew Member, because of his sexual orientation, homosexual.

46. Mr. Ogden frequently referred to Brady as a "faggot" and instructed Brady to kill himself because of his sexual orientation.

47. Again, Defendant's management witnessed Mr. Ogden's sexual harassment of Brady, but took no action to address it.

### MR. OGDEN HARASSED AN OVERWEIGHT EMPLOYEE BECAUSE HE DID NOT FIND HER SEXUALLY ATTRACTIVE AND WAS ARRESTED FOR IT

48. In February 2020, Mr. Ogden harassed Samantha LNU, Crew Member, because she was overweight and he did not find her sexually attractive.

49. Mr. Ogden repeatedly screamed at Samantha, called her a "fat bitch", and threatened to kill her.

50. Mr. Ogden's harassment was so severe, that Samantha called the police on him. It resulted in Mr. Ogden being arrested.

51. Defendant was aware of Mr. Ogden's arrest for his harassment of Samantha at Defendant, but did not terminate or even discipline him.

### MR. OGDEN WAS CHARGED WITH A DUI AT DEFENDANT

52. In or around April 2020, Mr. Ogden drank large amounts of alcohol and proceeded to crash his car while driving recklessly in Defendant's parking lot.

53. Mr. Ogden was charged with Driving Under the Influence ("DUI") for this incident.

### PLAINTIFF IS SEXUALLY HARASSED BY MR. OGDEN AND REPORTS IT TO DEFENDANT

54. On May 21, 2020, Plaintiff asked Mr. Ogden to get some hamburger buns.

55. Mr. Ogden responded by telling Plaintiff that he would grab some buns, and then stated, "turn around. I'll grab your buns."

56. Plaintiff immediately reported Mr. Ogden's sexually inappropriate comment to Ms. Gordon and inquired why he was still working at Defendant.

57. Ms. Gordon shrugged her shoulders and walked away in response to Plaintiff's complaint of sexual harassment.

58. Later that day, Plaintiff called Human Resources and reported Mr. Ogden's sexual harassment.

### **DEFENDANT DID NOT ADDRESS PLAINTIFF'S COMPLAINT OF SEXUAL HARASSMENT AND PROCEEDED TO RETALIATE AGAINST HER**

59. However, Defendant kept Mr. Ogden and Plaintiff scheduled during the same shifts.

60. Following Plaintiff's complaint to Human Resources, Mr. Ogden and Ms. Gordon retaliated against Plaintiff by making snide comments and attempted to ostracize her from her coworkers.

### **DEFENDANT USED PLAINTIFF'S DISABILITY AND ACCOMMODATIN REQUESTS AS THE REASON FOR NOT ADDRESSING HER COMPLAINT OF SEXUAL HARASSMENT**

61. On May 29, 2020, Plaintiff left Defendant due to Mr. Ogden's and Ms. Gordon's retaliatory conduct.

62. Shortly afterwards, Dawn called Plaintiff regarding her complaint to Human Resources and Defendant's refusal to properly address her complaint.

63. Dawn voiced her displeasure that Plaintiff had complained to Human Resources.

64. In addition, Dawn informed Plaintiff that Human Resources had concluded its investigation and would not be disciplining or terminating Mr. Ogden.

65. Plaintiff complained that Defendant was not properly addressing her complaint.

66. Dawn responded by telling Plaintiff, "He's [Mr. Ogden] is here seven (7) days a week and you're here three (3) or four (4) with your condition."

67. Dawn was directly referring to Plaintiff's breast cancer and/or accommodation requests and using it as a reason for why Defendant was not properly addressing her complaint of sexual harassment.

## PLAINTIFF REPORTED MR. OGDEN'S SEXUAL HARASSMENT AND DAWN'S USE OF HER DISABILITY AND/OR ACCOMOMDATION REQUESTS AGAINST HER

68. Later that day, Plaintiff called Human Resources and complained about Mr. Ogden's sexual harassment and Dawn's dismissive comment about her previous complaint and the use of Plaintiff's disability and/or accommodation requests against her.

69. The Human Resource Representative informed Plaintiff that Defendant had closed her first complaint.

70. Defendant did not engage in the interactive process, as no meaningful investigation took place.

71. They then asked Plaintiff if she was still was employed with Defendant.

72. The Human Resource Representative's question expressed to Plaintiff that Defendant wanted her to quit.

73. Plaintiff notified the Human Resource Representative that she no longer felt comfortable being employed by Defendant.

74. Plaintiff was constructively discharged.

75. It is Plaintiff's position that Defendant discriminated against her due to her disability, denied her a reasonable accommodation and retaliated against her for requesting a reasonable accommodation in violation of the ADA. In addition, Plaintiff contends that she was sexually harassed and retaliated against for reporting the aforementioned sexual harassment in violation of Title VII.

## COUNT I – DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

76. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

77. Plaintiff is a "qualified individual with a disability" as that term is defined under the

ADA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

78. Plaintiff was qualified to perform the job.

79. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

80. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

81. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

82. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

83. The purported reason for Defendant's decision is pretextual.

84. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

85. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

86. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT II – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

87. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

88. Plaintiff is a "qualified individual with a disability" as that term is defined under the

PHRA because Plaintiff has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

89. Plaintiff was qualified to perform the job.

90. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

91. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

92. Defendant did not have a legitimate non-discriminatory reason for terminating Plaintiff.

93. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

94. The purported reason for Defendant's decision is pretextual.

95. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

96. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

97. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III
## SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

98. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

99. Taken together, the acts outlined above constitute a hostile work environment based on sex.

    a. Plaintiff suffered intentional discrimination because of her sex.

    b. Such discrimination was severe, pervasive, and/or regular.

    c. Such discrimination detrimentally affected Plaintiff.

    d. Such discrimination would have detrimentally affect a reasonable person of the same protected class in Plaintiff's position.

100. The unlawful employment practices outlined above were intentional.

101. Plaintiff suffered tangible employment actions as alleged herein.

102. The harasser was Plaintiff's coworker.

103. Plaintiff reported the sexual harassment to Human Resources and her supervisor.

104. Defendant knew or reasonably should have known of the sexual harassment.

105. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

106. Indeed, upon information and belief, Defendant failed to discipline the harasser for his misconduct, which caused Plaintiff to be subjected to further harassment.

107. As a result of Defendant's actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

108. The above described acts of Defendant with regard to Plaintiff were egregious and were committed with a malicious, willful, and/or reckless indifference to the federally protected rights of Plaintiff.

109. The extreme and outrageous acts of Defendant merit the imposition of punitive damages.

    **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this

Complaint, *infra.*

## COUNT IV
## SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
## PENNSYLVANIA HUMAN RELATIONS ACT

110. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

111. The foregoing conduct created a sexually hostile work environment for Plaintiff.

112. Plaintiff suffered intentional discrimination because of her sex.

113. Defendant subjected Plaintiff to unwelcome conduct of a sexual nature that was severe and/or pervasive.

114. The harasser was Plaintiff's supervisor.

115. The discrimination detrimentally affected Plaintiff.

116. Plaintiff suffered tangible employment actions as alleged herein.

117. As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

118. Defendant knew or reasonably should have known of the sexual harassment.

119. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

120. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

121. Plaintiff engaged in activity protected by the ADA when she requested reasonable accommodations based on her disability in the form of a medical leave of absence and a 30-minute break per shift.

122. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

123. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff, Lisa Wardell, requests that the Court grant her the relief set forth in the Prayer for Relief clause, *infra*.

## COUNT VI – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

124. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

125. Plaintiff engaged in activity protected by the PHRA when she requested reasonable accommodations based on his disability in the form of a medical leave of absence and a 30-minute break per shift.

126. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

127. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff requests that the Court grant him the relief against set forth in the Prayer for Relief clause, *infra*.

## COUNT VII – RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

128. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

129. Plaintiff engaged in activity protected by Title VII.

130. Plaintiff complained of sexual harassment internally by reporting the aforementioned harassment to Defendant's Human Resources and to her supervisor and by opposing the harassment directly to her coworker who was harassing her.

131. Thereafter, Defendant took adverse employment action against Plaintiff, including, but not limited to, constructive discharge.

132. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT VIII – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

133. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

134. Plaintiff engaged in activity protected by the PHRA.

135. Plaintiff complained of sexual harassment internally by reporting the aforementioned harassment to Defendant's Human Resources and to her supervisor and by opposing the harassment directly to her coworker who was harassing her.

136. Thereafter, Defendant took adverse employment action against Plaintiff, including, but not limited to, constructive discharge.

137. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Lisa Wardell, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Emotional pain and suffering;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences;

(h) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and the PHRA.

(i) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy

is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: March 29, 2021  **By:**  */s/ David M. Koller*
David M. Koller, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com

*Counsel for Plaintiff*